### T. N. WAUL, Executor, &c. vs. THOMAS KIRKMAN.

As a general rule, a married woman cannot make a promise during coverture, which will bind her separate estate after the dissolution of the marriage; nor can any one else, as a general rule, make such a promise to bind her estate.

*Henderson* v. *Ilsley*, 11 S. & M. 9, cited, confirmed, and explained by the court.

The acknowledgment of the account by H. while executor, is sufficient evidence of the justness and validity of the claim at the time, unless barred by the statute of limitations.

The legislature intended by the 18th section of the act of 1844, to declare, that in all cases where a cause of action or other right existed prior to the passage of that act, the remedy to enforce the same would be barred after the lapse

Waul *v.* Kirkman.

of the same period of time from the date of the account, which it would take to bar the remedy in those cases in which the right accrued after the passage of that act; with the proviso, that if any preceding statute of limitation had commenced running against the claim before the passage of the act of 1844, the defendant might also plead and rely upon it in bar of the plaintiff's remedy.

The power may be conferred upon an executor by will, which will authorize him by an acknowledgment of liability to pay a debt, to take the case out of the operation of the statute of limitations. *Held*, that such a power was conferred in this case.

The acknowledgment of the justness of the debt due in this case, is sufficient to take it out of the operation of the 4th section of the act of limitations of 1844, limiting suits to three years. The four years had not elapsed from the period at which the acknowledgment was made, and this prevented the statute from running except from the date of the acknowledgment.

On appeal from the probate court of Tallahatchie county; Hon. A. H. Bullock, judge of the probate court.

On the 5th July, 1842, Mrs. Mary Smith was married to Samuel Hurd, in Alabama, and soon thereafter the parties removed to this State. On the 8th of October, 1843, Mrs. Hurd died; and at the May term, 1844, Mr. Hurd qualified as executor of her last will and testament, in the probate court of Tallahatchie county. On the 30th day of June, 1846, Mr. Hurd died, and soon thereafter, appellant qualified as the administrator of Mrs. Hurd.

Appellant, at the November term, 1848, having reported the estate of Mrs. Hurd insolvent, the probate court made an order, calling upon the creditors of the estate to present their claims to the clerk of the court, as commissioner of insolvency, in pursuance of law, and on the 9th of July, 1849, appellant presented to said commissioner an account against Mrs. Smith, alleged to have been contracted by her previous to her intermarriage with Mr. Hurd, and which account, amounting to $25,067.71, was allowed by the commissioner, and finally by the probate court, and appellant (Waul) appealed.

1. It is insisted, that the exception of appellant to the allowance of said account, should be sustained.

2. There is no evidence tending to show the original justice of said account, or any part thereof.

Waul v. Kirkman.

*Watson*, for appellant.

The separate property of a married woman is exempt from any liability for the debts or contracts of the husband. Hutch. Code, 497, art. 4, § 2. By the act of 1846, (Hutch. Code, 498, § 3,) this provision of law is yet further extended. *Fort* v. *Battle*, 13 S. & M. 133. In this case it is properly decided, that " a husband cannot bind his wife by submitting to an arbitration questions affecting her separate property."

This question is ably discussed, and a direct decision is made upon it, in the case, of *Powers* v. *Southgate and Wife*, 15 Verm. R. 471; 2 Penn. R. 490; 8 Eng. Com. Law R. 67; 11 Serg. & Rawle, 325, 326.

It will be seen, that there is no acknowledgment of the account or of any portion of it by Mrs. Hurd, either before her marriage to Mr. Hurd or afterwards.

It is the established law, that the promise to pay a debt barred by the statute of limitations, only removes the bar, and leaves the case to be proved, as if no statute had been pleaded. Breese, 216; 2 Bibb, 284; 6 New Hamp. 367; 2 McMullen, 506.

That the will of Mrs. Hurd has no bearing upon the question of the statute of limitations, see Angell on Limit. 245, § 26; Hardin, 17; 1 Hawks, 304; 6 Johns. Ch. 266.

*J. S. Yerger*, for appellee.

1. It is objected, that the claim should not have been allowed because barred by the 12th section of the act of 1844, (Hutch. Code, 831.) The administration of Hurd was taken out on the 13th of May, 1844, and the estate reported to be insolvent on the 14th of November, 1848, making just four years and six months from the time of administration granted; deducting from that period nine months, which the law allowed to Hurd before suit could be brought against him, will leave only three years and nine months.

But it is contended, that as the claim was not presented to the commissioner of insolvency before the expiration of four years and nine months, it only being presented on the 9th of July, 1849, that the statute has run out. Our act (Hutch.

Code, 668, § 103) suspends all right to sue when an estate is represented to be insolvent, and gives to creditors eighteen months in which to present their claims; some alteration is made as to the length of time in which the commission is to be kept open by the act of 1848, (Hutch. Code, 683, § 5,) but that act allows the creditor the whole time that the commission is kept open to present his claim, as well as the previous act. See Hutch. Code, 673, § 1.

In Alabama and Vermont, upon similar statutes, the courts have decided, that the statute does not run on during the interval between the declaration of insolvency and the report of the commissioner. 21 Verm. R. 584; 8 Ala. R. 428.

2. It is next objected, that the 10th section of the act of 1844 (Hutch. Code, 831) bars this claim.

This act does not apply to this case by the express provisions of the 18th section. Hutch. Code, 832. The claim here originated before the passage of the act of 1844, and also the death of Mrs. Hurd.

In the construction of the 12th section of this act, this court has held, that it did not apply to an administration previously granted. Again, this court have held, that the acts of 1844, (Hutch. Code, 830, § 14,) and the act of 1846, (Hutch. Code, 833,) apply only to after acquired judgments, and form no bar to judgments previously acquired. And again this court held, that the act of 1846, section five, (Hutch. Code, 687,) did not enlarge the time for the presentment of claims to two years against an administration previously granted, but that the old law must prevail. 1 How. Miss. R. 182, 192; 2 Angell on Limit. 19; 3 Paige, Ch. R. 409; *Robertson* v. *Demoss*, 1 Cushm. R. 298; Ib. 269, 319; 10 Wend. R. 363; 13 S. & M. 395; 3 New Hamp. 473; *Gault* v. *Beaumont*, Opinion Book, 375; 14 S. & M. 127, especially 130.

The act of 1844, section 10, does not apply, because under the construction given to the 10th section of said act in the case of *Jennings* v. *Low*, (see Opinion Book, 315,) the creditor is allowed one year from the death in which the statute does not run. Such is the construction given to a similar act in New York. See 13 Wend. R. 267.

The 18th section of this act declares, that the period of limitation should commence from the date (the 24th February, 1844) of the act. At that time there was no person to be sued, and under the 10th section the creditor had his year to get administration on the estate, and the administrator or executor had nine months, which made twenty-one months to be deducted from the time. Thus, from the 24th February, 1844, to the 13th November, 1848, is four years eight months and nineteen days; deduct twenty-one months, leaves two years eleven months and nineteen days for the operation of the statute. Or, if the twelve months is not to be allowed on Hurd's administration, yet after his death in June, 1836, the year would be allowed upon his death as applied to the administration of Waul, which would give the same result as to time. Or if the nine months applies to both administrations, then three years have not expired. Besides, the debt was admitted to be due on the 15th of May, 1845, on the 16th of September, 1845, and in March, 1846, before any bar had attached, so that the act can only run from those periods.

It is not pretended, that the act of 1822 (Hutch. Code, 825, § 4) applies to this case. The last item in the account is on the 1st March, 1842; from the 1st March, 1842, to 13th November, 1848, is only five years eleven months and thirteen days.

It is next objected, that although the statute of limitations. does not apply, yet there is no proper proof of the account as. against Mrs. Hurd. The record shows the admissions of the husband during the marriage, under such circumstances as can leave no doubt upon the subject. The relations between the parties, the situation of the property, all go to show that Mrs. Smith knew of and admitted the debt; although it is not generally true, that a husband can bind the wife by his admissions, yet if the circumstances show that the husband manages the conveyance of a joint property, his admissions should bind the wife. Any other rule would be most unjust and iniquitous. 5 Term R. 513; 3 Eng. C. L. R. 314; 11 Ib. 84; 8 Ib. 294; Add. R. 316, 319; 2 Phil. Evid. notes, 152; Park on Insur. 4; 14 Eng. C. L. R. 147, 278; 20 Ib. 63; 47 Ib. 585; 2 Verm.

R. 289; 2 Stark. Evid. (5th edit.) 25, 26, 32, 33; 10 Johns. R. 38.

Again, the cases in 8 Eng. C. L. R. 67; 15 Verm. 471; and 11 S. & M. 1, are cases where the debt has been barred by the statute, and simply decide, that such cases cannot be revived. They do not apply to this case, as the statute had not run. Besides, the case in 15 Verm. does not decide the question. The opinion delivered is simply that of the single judge, the case having been decided upon another point. The opinion read from 11 Serg. & Rawle, 325, is a loose and not well considered opinion, and not entitled to any authority.

Again, this case shows that this is the account of Mrs. Smith's general agent for a long series of years, made in the course of transacting her business, and from necessity will be allowed to prove itself. But, admitting that there is no proof to show that Mrs. Smith ever acknowledged the justice of the claim, yet by her will she appointed her husband executor, with power to charge her estate with her debts, as well as his, and to settle the same, obtain time, or sell property to pay them. The executor repeatedly, before any bar had attached, admitted the debt after he qualified, and these admissions are binding. This is not the case of an attempt to revive a debt already barred, but is simply an offer to show the admission to the administrator, with full power to establish the existence of the debt. The letter of 15th May, 1845, specially refers to this debt, as may be seen by referring to the $15,207 credit in the account, and that item being referred to in that letter. The case in 11 S. & M. 1, is the case of an attempt to revive a debt barred before the acknowledgment. The acknowledgment in this case is in writing of an existing debt, and as such is full proof to establish the existence of the debt. That an executor has power to make such acknowledgment, and that such admissions will establish the debt, it seems to me does not admit of doubt. 5 Wend. R. 561; 5 Pick. R. 391; 9 Hump. R. 718; 4 Greenl. R. 507; 15 Mass. R. 374; 16 Ib. 429; 7 Term R. 182; 1 Greenl. Evid. § 179; 16 Johns. R. 277. See case, *Bobb* v. *Executor of Smith*, decided by the high court, January, 1849, upon this point alone. Having first decided the admission not admissi-

ble, upon reargument the court decided it admissible, and affirmed the judgment below.

Again, Waul, the present administrator, in his petition for sale of the real estate, and to have the estate declared insolvent, admits the existence of Kirkman's debt; and without finding that debt to be due, the decree of insolvency could not have been made. These admissions by Waul, and the action of the court upon them, conclude him. He is estopped, and will not be permitted to set up any thing to defeat the decree made on his own representation. 2 Eng. C. L. R. 223; 11 Ib. 187; 34 Ib. 144; 46 Ib. 989; 14 Ib. 278; 3 Conn. R. 76; 4 Ib. 544; 3 Greenl. 316; 4 Ib. 507; 4 Harrington, 521; 9 Ala. R. 925; 7 D. & E. 663; 13 S. & M. 161; 1 Stark. Evid. 336; 1 Phil. Evid. 89, 90.

Again, by the act of 1846, §§ 5, 13, a new mode of probating accounts against estates is created. See Hutch. Code, 682, 683. This claim was proved under the thirteenth section of this act, was allowed under the 5th, and was so probated upon to the insolvent commissioner under the act of 1848, § 5, (Hutch. Code, 683). This act of 1848 makes a claim so probated sufficient evidence for the commissioner to act on and allow the claim. Upon exceptions taken to the commissioner's report, he must introduce the proof to show that the claim was not properly allowed, otherwise it will be allowed by the court. In this case, if all the additional evidence of Kirkman is considered out of the case, yet this probated account, remaining unimpeached by any evidence from contestant, must prevail.

*Watson,* for appellant, in reply.

1st. It is contended, that the statute did not run against the claim of Kirkman, after the declaration of the insolvency of Mrs. Hurd's estate. The estate was declared insolvent in the fall of 1848, but at the same time an order was made by the court, which was duly published, "requiring the creditors of said estate to file their claims against the estate probated according to law, with the clerk of the probate court, by a day stated." Hutch. Co. 683, § 5.

It is true that the law declares, that " no action or suit shall

be commenced or sustained" against the representative of an estate which has been declared insolvent (Hutch. Co. 668); but at the same time the law prescribes the remedy of the creditor, which is the filing of his claim as provided for. The filing of a claim with a commissioner of insolvency would, no doubt, be held to be equivalent to the bringing of a suit, where suit could be brought, and would, doubtless, arrest the running of the statute. But to hold, that the statute did not run after the declaration of insolvency, would defeat the policy of the law, which is to facilitate the winding up of estates, and introduce an exception to the statute not found in the statute itself; and this, this court will not do. 13 S. & M. 500–509.

The statute of limitations is one of good policy; it is a statute of repose, and should not be so construed as to defeat the object intended. 13 S. & M. 512.

2d. The 10th section of the act of limitations (Hutch. Co. 831), has no application to this case. Mrs. Hurd had not been twelve months in this State, certainly not two years, when she died, October 8, 1843; at her death, then, the claim in question had more than one year to run before it could have been barred by the lapse of time; add to this the nine months during which the statute was suspended, after a representative qualified on her estate, and without the aid of this 10th section, Kirkman had near two years during which the statute could have not barred his claim, and to such a case the 10th section has no application. This is the doctrine established by the unreported case referred to on the oral argument.

3d. The claim is barred by the 12th section of the act of limitations. Hutch. Code, 831.

This section provides, that after the expiration of four years from the qualification, all causes of action against the estate of the testator or intestate " upon which no proceedings shall have been had, shall be deemed to have been paid and discharged, saving," &c.

Hurd qualified as executor of Mrs. Hurd, 2d May, 1844. The above section, then, applies to the case, 13 S. & M. 395. From May, 1844, until July, 1849, no proceedings were had or

taken on the claim in question. Here, then, is a period of five years and upwards. The case certainly falls within the very letter of the law. It is settled, that nine months are to be added to this period of four years, (13 S. & M. 395,) but in this instance, there is still time to spare.

An additional nine months on the qualification of an administrator *de bonis non,* cannot be added. This is plain from the language of the law. Hutch. Co. 674, Art. 6, § 1. No suit is to be brought "till after the expiration of nine months from the date of proving the will of testator, or granting letters of administration." This language excludes the idea of being applicable to a succession of administrations on the same estate. Mrs. Hurd, indeed, left a will, which was duly probated, and this fact, looking to the very letter of the law, made Waul on his qualification as administrator *de bonis non* of her estate in 1846, at once subject to the suit or action of her creditors, her will at that time had been probated more than nine months.

A different construction of this law would introduce incalculable mischiefs. Executors and administrators often die or resign, or are removed; and if each new administration is to tie up the hands of creditors for the period of nine months, their remedies against estates of decedents may be indefinably suspended.

4th. The claim is barred by the 4th section of the act of limitations, (Hutch. Co. 830).

All correspondence between Mr. Hurd and Kirkman, ceased in February, 1846; after this time it is not pretended that there was by any one any promise or agreement touching this claim. From February, 1846, until July, 1849, is a period of upwards of three years, and this lapse of time consummates the bar of the statute. The qualification of Waul, as has been shown, did not for a moment suspend the running of the statute, and the idea that the notice taken of the claim by Waul in his petition, suggesting the insolvency of the estate, I cannot believe requires to be considered.

5th. In reply to the suggestion, that this claim having been probated, could not afterwards be controverted before the commissioner or the court, I have only to ask the court to read and

52*

consider the law under which the proceedings before the commissioner of insolvency took place. Hutch. Code 683, § 5.

The claim was not probated until July, 1849.

Mr. Justice YERGER delivered the opinion of the court.

Three errors have been assigned, for which it is said the decree should be reversed.

1. That the claim of Kirkman is not sustained by legal and competent evidence.

2. That it is barred by the statute of limitations of three years. Hutch. Code, 830, §§ 4, 10.

3. That it is barred by the statute of limitations of four years, as provided in section 12 of the act of February, 1844. Hutch. Code, 831.

These questions will be considered in the order in which they have been stated.

It is in proof, that the defendant in error was the general agent of Mrs. Hurd, while she was a widow, named Smith, and so continued up to her marriage with S. Hurd, which took place in the State of Alabama on the 5th day of July, 1842. The account commenced on the 31st March, 1838, and the last item of debit in it is dated March 1st, 1842. After the marriage of Mrs. Smith with S. Hurd, the account on file was made out and examined by him; and on the 6th day of March, 1843, he made a memorandum in writing in the following words: "Received an account, as stated above, and find it correct." A witness named Barker, who made out this account, says that Hurd attended from time to time while he was making it out, and furnished memoranda in relation to it, which were used in preparing the account. Mr. and Mrs. Hurd moved to Mississippi soon after their marriage, and there are several letters written by Hurd during her life, referring to the debt due to defendant. Mrs. Hurd died on the 8th day of October, 1843. Prior to her death, she made a will appointing her husband executor of her estate. He qualified as such on the 13th day of May, 1844. Before his qualification he wrote several letters to Kirkman, referring to the debt due to him by Mrs. Hurd, and suggesting modes of settling it. On the 15th

of May, 1845, after his qualification as executor, he wrote a
letter to Kirkman in relation to the compromise of a suit
against him by Mrs. Pope, and in this letter he says : " In
making a compromise of that sort, it will be necessary to put
the debt to you into instalments, for the payment of each of
which I would give a note with deed of trust, or mortgage
upon the negroes of the estate," &c. In the same letter he
says : " I find it necessary that I should have a distinct voucher
respecting the credited sum of $15,203.19, for which you took
my receipt, inasmuch as the amount must appear in my trans-
actions as executor."

In another letter, dated February 6, 1846, he says : " Mrs.
Pope has discarded the essential conditions of the proposed
compromise, viz. : first securing the debt to you," &c.

The deposition of B. B. Barker identifies the account filed
by Kirkman in the probate court, as the same made out by him
and handed to S. Hurd on the 6th of March, 1843 ; and on that
account the item of credit referred to in the letter of S. Hurd
of 15th May, 1845, is entered in these words : " Cr. by amount
due on settlement of T. K.'s accounts as executor of J. L. D.
Smith, filed in orphans' court of Lauderdale county, Alabama,
date January 1, 1843, being one half of same $15,203.17." It
is very clear, then, from the proof, that the debt which Mr.
Hurd referred to in his letters of 15th May, 1845, and 6th Feb-
ruary, 1846, and which he expressed his anxiety to pay out of
the assets belonging to the estate of his wife, is the same debt
probated and allowed in the present suit. But it is said, that
the acknowledgments made by Mr. Hurd during the coverture
of the justice and legality of this account, are not sufficient to
charge the separate estate of Mrs. Hurd, since the dissolution
of the marriage by her decease.

It is certainly true, as a general rule, that a married woman
cannot make any promise, during the coverture, which will
bind her separate estate after the dissolution of the marriage.
Nor can any one else, as a general rule, make any such promise.
We have referred to the foregoing facts, for the purpose of
showing that Mr. Hurd, after his marriage with Mrs. Smith,
and at a time when he was interested in ascertaining the jus-

tice of Kirkman's account, and in resisting any illegal or incorrect charges that might be contained in it, had thoroughly scrutinized the account, and had, in fact, assisted in making it out; and, therefore, well knew that it was entirely just and correct, when he afterwards, as executor of his wife, admitted it to be due, and proposed to make arrangements to pay it.

It is insisted by the counsel for the appellants, that the acknowledgment of this liability by the executor, and an offer by him to pay the account, are not sufficient evidence of the validity of the account, in a proceeding against the estate of Mrs. Hurd.

We recognize fully the authority of the decision made by the court in the case of *Henderson* v. *Ilsley*, 11 S. & M. 9. In that case, the court held, that an acknowledgment of a debt, or a promise to pay a debt barred by the statute of limitations, made by an executor or administrator, would not, as a general rule, revive the debt against the estate. Nor would such a promise or acknowledgment prevent the statute of limitations from continuing to run against a debt not barred at the time such promise or acknowledgment was made.

But that case did not decide, nor do we believe it to be the law, that a promise or acknowledgment of a debt by an executor or administrator, is not sufficient *primâ facie* evidence of the original validity of the demand, and, therefore, sufficient to justify the verdict of a jury in its favor in the absence of any other proof, and where the claim is not barred by the statute of limitations.

We are, therefore, of opinion, that the acknowledgment of the account made by Hurd, while administrator, and his proposal to pay the same, are sufficient evidence of the justness and validity of the claim at that time, and warranted a judgment against the estate of Mrs. Hurd, in the absence of other proof, unless the same was barred by the statute of limitations, when proceedings were taken to enforce its collection.

2. This brings us to the consideration of the second question. Was this claim barred by the fourth and tenth sections of the act of limitations, (Hutch. Code, 830) ?

That section provides, that " all actions upon the case and

of account for the recovery of money, except actions upon promissory, &c., shall be commenced within three years next after the cause of such action shall have accrued."

This statute of limitations was passed on the 24th of February, 1844. The last item of debit in the account was made on the 1st day of March, 1842. The cause of action in this case had accrued, therefore, before the passage of the statute, which could not be made to apply to it, without giving the statute a retrospective effect, if the fourth and tenth sections above referred to stood alone.

But the eighteenth section of the statute declares, " that the periods of limitations established by this act shall commence running from the date of the passage thereof, and that all acts and parts of acts conflicting with and contrary to the provisions of this act, be, and they are hereby repealed. Provided, however, That the repeal of such acts of limitation as are contrary to the provisions of this act shall not be construed to revive any cause of action which has been barred by any of said acts, nor shall the passage of this act stop the running of the limitations contained in any other act, when the same may have commenced before the passage thereof."

It is difficult to say precisely what the legislature intended by this section; but in the case of *Kilcrease* v. *Shelby*, 23 Miss. R. 162, it was declared, that where the statute of limitations of six years had commenced running prior to the passage of the act of 1844, which reduced the limitation to three years, and the action is brought more than six years after the first act commenced running, and more than three after the passage of the act of 1844, the defendant could plead, and would be protected by either act.

After very full examination of this point, and reference to the various decisions which have been made touching the statute of limitations of 1844, we think the legislature intended by the eighteenth section to declare, that in all cases where a cause of action or other right existed prior to the act of 1844, the remedy to enforce the same would be barred after the lapse of the same period of time from the date of that act which it would take to bar the remedy in those cases in which the right accrued

after the passage of that act, with this additional proviso, that if any preceding statute of limitation had commenced running against the claim before the passage of the act of 1844, the defendant might also plead, and rely upon it in bar of the plaintiff's remedy.

Entertaining this opinion, we think the plea of the 4th and 10th sections of the statute of limitations presents a bar to the plaintiff's right of recovery, unless there is something which withdraws this case from the operation of that rule. For the plaintiff it is alleged, that the acknowledgment of this debt made by the executor on the 15th of May, 1845, and the 6th day of February, 1846, takes this case out of the operation of the statute.

In answer to this it is insisted for the defendant, that no promise made by an executor or administrator will revive a case barred by the statute of limitations when made to prevent the statute from continuing to run if made before the bar is complete, and on this point we are cited to the case of *Henderson* v. *Ilsley*, 11 S. & M. 9, before referred to. In that case the court held, that where nothing more than ordinary powers were conferred by the will, an executor could not, by his promise, revive a debt barred at the time of the death of the original debtor, nor prevent the statute from running against claims in which the bar was not complete, or where the statute had not commenced running at the death of the debtor.

As before remarked, we recognize this rule. But in looking to the opinion of the court, it will be seen that the intimation is very strongly made, that such powers may be conferred upon an executor by the will, as will authorize him by an acknowledgment of the debt or a promise to pay it, to take the case out of the operation of the statute. We have no hesitancy in saying, that such a power may be conferred by the will, and we think it is clear that they were conferred in the present case.

By reference to the will, it will be seen, that a very broad power and almost unlimited discretion was conferred upon the executor in every thing relating to the management of the estate and the payment of debts.

Prior to the marriage of the testatrix with Samuel Hurd, a

marriage settlement was entered into between them, by which one half of the property of the testatrix was settled upon her for her separate and exclusive use, with power to dispose of the same by will. The remaining portion of her estate was settled upon Hurd.

After expressing her desire that the conditions of that marriage settlement should be fulfilled, the testatrix thus proceeds: " It is my will that my portion of the estate shall remain connected with my husband's without division, and managed to the best advantage, until the profits arising from the estate shall pay off the debts against it, whether they be in my own name or the name of my husband."

Nothing can be plainer than the will of the testatrix thus expressed, to place the management of her property under the control of her husband; to be worked and managed without division, to the best advantage, in connection with his own property, " until the profits arising from the estate, would pay the debts." Such being her desire, and such being the power conferred upon the executor, it is manifest, that in order to carry out this intention, he must have been clothed under the will with such powers touching the payment and settlement of the debts as would enable him to make such acknowledgments of them, and promises of payment at a future day, as would induce creditors to delay suits against the estate, and thus enable him, by the time of payment being thus postponed, so to manage the estate as to pay the debts from the profits accruing therefrom.

Such, we think, were the powers conferred by this will upon the executor, and from the correspondence contained in the record, we think it clear, that the acknowledgment of the debt was made in this case by the executor, and the proposition made by him to pay it in order that the wishes of the testatrix might be carried into effect regarding the management of her estate and the payment of the debts.

It will be seen, that in a letter of the executor dated on the 6th of February, 1846, the debt due to the plaintiff was distinctly acknowledged, and also a desire to pay it distinctly

expressed. So strong was this desire, and so justly due did he consider the debt of the plaintiff, that he declined making a compromise with another creditor of the estate, because that creditor was unwilling to enter into it upon the condition that the debt due to the plaintiff should in the first instance be secured. The language of the letter is as follows: " Mrs. Pope has discarded the essential conditions of the proposed compromise, viz., first securing the debt to you," &c. What that proposed compromise was will be seen in another letter, written on the 15th May, 1845, in which he says: " Mrs. Pope's lawyers, Watson and Clapp, at Holly Springs, suggested as the basis of a compromise between Mrs. Pope and myself, that I acknowledge the $10,000 claim, and she relinquish all claims under the will. I told them, perhaps I might accede to their proposition somewhat modified, but your consent and approbation were necessary to any such arrangement. In making a compromise of that sort, it would be necessary to put the debt to you into instalments, for the payment of each of which I would give a note with deed of trust or mortgage upon the negroes of the estate, each note secured by a certain number of negroes."

The acknowledgment of this debt, thus made by the executor, was in writing, and is, therefore, within the provisions of the 16th section of the act of limitations of 1844.

The estate was declared insolvent in November, 1848, at which time three years had not expired from the 6th of February, 1846, the date of the last acknowledgment. After the declaration of insolvency, no suit could be brought against the executor, and the running of the statute of limitations was, therefore, stopped. This principle is clearly established by the decision of the court in the case of *Dowell* v. *Webber*, 2 S. & 452, which has been uniformly acquiesced in since it was made. We are, therefore, of opinion that the acknowledgment of the debt in this case takes it out of the operation of the 4th section of the act, limiting suits to three years.

3. Having come to this conclusion in relation to this section, it necessarily follows that the same reasons will govern us in

reference to the 12th section of the statute, which limits certain suits against executors, &c., to four years from the qualification of such executor.

The executor qualified in this case on the 13th day of May, in the year 1844. The acknowledgments of indebtment were made, as before stated, on the 1st of May, 1845, and 6th February, 1846; and as the estate was declared insolvent in November, 1848, it is clear, that four years had not elapsed from the period at which this acknowledgment was made, which, in the view we have heretofore taken, prevented the statute from running except from the date of such acknowledgment. Entertaining these views, we are of opinion, that the decree of the probate court should be affirmed.

SMITH, Justice, concurs.

FISHER, J., having been counsel, gave no opinion.